IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAM VERNON WINDY BOY, JR.,<br><br>Defendant. | CR 13–14–GF–DLC<br><br>ORDER |

Defendant Sam Vernon Windy Boy, Jr. has filed a motion to suppress his statements resulting from interrogation in this matter. (Doc. 22.) Defendant challenges the voluntariness of his *Miranda* waiver and his inculpatory statement made following the polygraph under the Fifth and Sixth Amendments. Defendant also seeks further evidence relating to his polygraph examination and to be permitted to question the FBI interviewer about the polygraph without revealing its results at trial. The motion to suppress will be denied because no constitutional violations occurred during Defendant's polygraph or interview. Defendant may present any defense he sees fit at trial, but the Court will not prohibit the

1

government's response if Defendant opens the door to polygraph examination questioning at trial.

## I. Facts

Defendant agreed to the administration of a polygraph examination in connection with allegations that he sexually abused a nine year old boy named I.E. Defendant rode to Havre, Montana from the Rocky Boy Indian Reservation with a tribal investigator to take the polygraph. FBI Special Agent Stacey Smiedala interviewed Defendant in a conference room for a total of approximately one hour and thirty-five minutes. The agent showed Defendant an electronic version of an FD-395 "Advice of Rights" form informing Defendant of his Miranda rights. The form was read aloud, Defendant acknowledged that he understood his rights, and signed the form electronically.

Defendant was also shown an FD-328 "Consent to Interview with Polygraph" form informing Defendant of his right to refuse the polygraph examination, to stop the test at any time, and refuse to answer any questions. Defendant read the second form aloud, acknowledged that he understood it, and signed it electronically. Agent Smiedala then explained the interview process including the use of the polygraph, and began the interview by exploring Defendant's biographical history including any pertinent health issues. Agent

Smiedala asked Defendant if he ever sexually abused I.E., which Defendant denied.

Agent Smiedala performed the polygraph examination on Defendant and determined the results indicated Defendant was being deceptive. When he informed Defendant of such Defendant admitted he lied during the polygraph questioning and described performing a sexual act on I.E. in August 2012 when he and I.E. were alone together. Defendant said he was remorseful about the contact with I.E. and would apologize if he saw him again. Defendant agreed to recording a summary statement of his confession. Defendant admitted to lying to Agent Smieldala previously and said he both traveled to Havre and made his statement voluntarily. Defendant was indicted on counts of aggravated sexual abuse of a child and abusive sexual contact on February 6, 2013, and filed a motion to suppress his statement on March 8, 2013 (doc. 22).

## II. Discussion

### A. Defendant Was Not in Custody for *Miranda*[1] Purposes

Because the Fifth Amendment right to counsel does not vest until a defendant is in custody, the Court must first determine whether Defendant was in custody during his interview and polygraph prior to deciding if his waiver of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda* was voluntary.

Whether a person is in custody for *Miranda* purposes is determined by examining the totality of the circumstances surrounding the interrogation. *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002). "The inquiry focuses on the objective circumstances of the interrogation, not the subjective views of the officers or the individual being questioned." *Id.* A person is in custody if the officers create a setting in which a reasonable person would not feel free to leave. *Id.* The main factors to consider in making this determination are: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* at 974 (citing *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir.2001)).

Voluntary initiation of contact with police by a suspect strongly suggests a non-custodial situation, even where the suspect accompanies police to the station, but it does not end the inquiry. *Id.* If the interview becomes coercive or the suspect's freedom to leave is restrained in any way, a non-custodial interview can become a custodial interrogation. *Id.* at 975. On the other hand, if the suspect is told explicitly that he is free to leave at any time and the duration of the interview

is not excessive, the suspect is likely not in custody. *Id.*

The totality of the circumstances surrounding Defendant's polygraph and post-polygraph interview convince the Court that Defendant was not in custody. Defendant agreed to take the polygraph exam and a month later agreed to travel with law enforcement to Havre. Defendant read and signed forms advising him of his *Miranda* rights and his right to end the polygraph at any time or refuse to answer any individual question. Defendant confirmed the information contained within the forms in his recorded statement, and he said he came to Havre voluntarily. Defendant's suggestion that his consent was involuntary or uninformed because he is a diabetic and had not eaten that morning is refuted by his coherent and reasonable responses during his recorded statement at the end of his interview.

Defendant's argument that Agent Smiedala was required to re-Mirandize him prior to his post-polygraph interview fails because he was never in custody. Despite this fact, Defendant was informed of his *Miranda* rights prior to the polygraph. The short duration of the interview does not warrant further explanation of Defendant's rights even if he had been in custody. *Wyrick v. Fields*, 459 U.S. 42, 47 (1982). Thus, although it appears Defendant's *Miranda* waiver was voluntary, the Court need not reach this issue because he was not in

custody during his interview.

**B. Defendant Was Not Entitled to Counsel Under the Sixth Amendment**

Similarly, Defendant's contention that his Sixth Amendment right to counsel was violated because an FBI request for a polygraph is a critical stage criminal proceeding is unpersuasive. "The Sixth Amendment right to counsel, however, does not attach until the initiation of the first adversarial proceedings against the defendant." *Hines*, 963 F.2d at 257. A defendant's arraignment generally initiates the adversary proceedings against him as well as his concurrent Sixth Amendment rights. *Id.* The polygraph examination in this case was not a critical stage proceeding because Defendant had not been charged with or arraigned for any crime. His Sixth Amendment right to counsel was not violated and his motion to suppress must be denied on this issue.

**C. Voluntariness of Defendant's Confession**

Defendant's confession to Agent Smiedala was voluntary. A confession must be made voluntarily pursuant to the Fourteenth Amendment. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *Id.* (citing *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981)). The key consideration in determining voluntariness is whether the defendant's will was

overborne by law enforcement based on the totality of the circumstances. *Haswood*, 350 F.3d at 1027. Courts consider the following factors: age and intelligence of the defendant, whether the defendant was informed of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning by law enforcement, and the use of physical punishment such as sleep deprivation. *Id.*

There is no evidence that Defendant's confession was involuntary in this case. Defendant agreed to go to the FBI office to take the polygraph, voluntarily went with a tribal investigator to Havre for the examination, and confirmed verbally and in writing that he made his statements voluntarily and law enforcement did not trick him or force him to confess. Defendant is over 68 years old and there are no indications he lacks the intelligence to understand the polygraph procedure. Although Defendant has diabetes and alleges his blood sugar was low at the time of the interview, his recorded statement at the end of the interview is entirely coherent. Also, Agent Smiedala asked Defendant about any health conditions during the pre-polygraph questioning, so Defendant had the opportunity to inform him of any issues with his diabetes.

The recording of Defendant's confession demonstrates the agents were not threatening in their questioning--Defendant even says the agents treated him fairly.

Finally, Defendant signed rights advisement forms stating his statements were voluntary and truthful, and affirmed the forms verbally on the recording. The forms explained the right to remain silent, to refuse the polygraph, not answer any individual questions, and to stop the interview at any time. Although Windy Boy argues Agent Smiedala promised his case would be prosecuted in Tribal Court and threatened he would be facing life imprisonment in federal court if he did not confess, he says on the recording that no threats or promises were made. The totality of the facts surrounding Defendant's confession convince the Court that it was made voluntarily. A voluntariness hearing is thus not warranted in this case and Defendant's motion to suppress must be denied.

**D. Admissibility of Polygraph Evidence**

Defendant requests to question Agent Smiedala at trial regarding the polygraph, the post-polygraph interview, and the recorded summary without having the results of the polygraph admitted. Defendant submitted supplemental authority of *United States v. Alvirez*, 2013 WL 1092709, arguing *Alvirez* supports Defendant's desire to use the polygraph as an operative fact that will provide necessary context to the interrogation. Defendant's request will be denied, but he maintains his right to present a complete defense as outlined in *Alvirez*.

In *Alvirez*, defendant Alvirez sought to raise a multiple interrogation

defense including evidence that he was coerced into confessing during the third interview following a polygraph. The district court denied Alvirez's motion to exclude reference to the polygraph evidence, which he claimed on appeal foreclosed his defense because the prosecution could have admitted the results of the polygraph. *Alvirez*, 2013 WL at *7. Alvirez cited *Crane v. Kentucky* in arguing the district court's denial prevented him from presenting a complete defense. The Ninth Circuit affirmed, holding Alvirez was still free to call key witnesses, present specific information supporting his case, and refute essential elements of the government's case against him. *Id.* at *8. Unlike in *Crane*, Alvirez maintained his right to present a complete defense but elected not to as a legal strategy. *Id.*

Both parties agree that polygraph evidence is disfavored in the Ninth Circuit and cannot be used to establish the truth of statements made during the examination. *United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988). Despite this well-settled law, Defendant argues *Alvirez* permits him to have it both ways–question Agent Smiedala regarding the details of the polygraph examination without the prejudicial results of the examination coming into evidence. *Alvirez* holds no such thing. The district court in *Alvirez* denied what appears to be the same argument Defendant asserts here. The government does not intend to discuss

the polygraph examination in its case in chief. As in *Alvirez*, Defendant may assert any defense he wishes. He may call key witnesses, present specific information supporting his case, and refute essential elements of the government's case. However, if Defendant opens the door to admission of the polygraph examination, the Court will not prevent the government from walking through it. Defendant's requested pretrial ruling is not supported by the law and would cause an unfair result. To the extent this issue may be resolved in the context of a motion to suppress, it is denied.

Accordingly, IT IS ORDERED that Defendant's Motion to Suppress (doc. 22) is DENIED.

Dated this 17th day of April, 2013.

_____
Dana L. Christensen, Chief District Judge
United States District Court